LLOYD BRYANT, aka HERSCHEL BRYANT, Appellant,
v. THE STATE OF NEVADA, Respondent.

No. 15336

ROBERT FRANK DVORAK, Appellant, v.
THE STATE OF NEVADA, Respondent.

No. 15852

June 26, 1986                                721 P.2d 721

*Wright Shinehouse & Stewart,* Las Vegas, for Appellant Lloyd
Bryant; *John G. Watkins,* Las Vegas, for Appellant Robert Frank
Dvorak.

*Brian McKay,* Attorney General, Carson City, *Robert J.
Miller,* District Attorney, *Randall H. Pike* and *James Tufteland,*
Deputy District Attorneys, Clark County, for Respondent.

## OPINION

*Per Curiam:*

In these two consolidated appeals, we are faced with challenges to the validity of two guilty pleas. In both cases, the defendants challenge their pleas on the ground that they were not entered knowingly and intelligently because the lower courts did not

sufficiently canvass them to determine if they understood the nature of the charges to which they were pleading guilty.

In the past, this court has been faced with similar challenges to guilty pleas, and has on those occasions set forth the criteria necessary for the entry of a valid plea. *See, e.g.,* Hanley v. State, 97 Nev. 130, 624 P.2d 1387 (1981); Heffley v. Warden, 89 Nev. 573, 516 P.2d 1403 (1973); Higby v. Sheriff, 86 Nev. 774, 476 P.2d 959 (1970). Nevertheless, we continue to be presented with numerous challenges to guilty pleas, and often these challenges reveal a confusion or a misunderstanding of the criteria and rules pertaining to the validity of guilty pleas. Accordingly, we have consolidated the two present cases to clarify our position on the law relating to the acceptance of guilty pleas.[1] Before discussing the intricacies of these two cases, however, a brief review of the law in this area is warranted.

In 1941, the United States Supreme Court held that as a matter of due process, a defendant must enter a guilty plea with "real notice of the true nature of the charge against him." *See* Smith v. O'Grady, 312 U.S. 329, 334 (1941). Both our legislature and this court have adopted this constitutional rule by requiring a trial court to address a defendant personally at the time he enters his plea to determine whether he understands the nature of the charge to which he is pleading guilty. *See* NRS 174.035(1);[2] *see also* Hanley v. State, *supra.*

As we held in *Hanley,* two methods exist whereby a district judge may affirmatively elicit such an understanding from a defendant at the time the judge accepts a plea of guilty. The judge may elicit either a statement from the defendant indicating that he understands the elements of the offense, or an admission from the defendant indicating that he committed the crime charged. *See Hanley,* 97 Nev. at 134, 624 P.2d at 1390.

We have always preferred that trial courts conduct plea canvasses in accordance with the above standards whenever possible and in as thorough a manner as possible. As we noted in Higby v. Sheriff, *supra,* judicial resources are wasted when a defendant is

---

[1]We note that the present two cases involve challenges pertaining solely to whether the defendants understood the nature of the charges against them, and the defendants do not challenge the validity of their pleas in any other respect. *See generally* Hanley v. State, *supra.*

[2]NRS 174.035(1) provides in part that a trial court "shall not accept [a guilty] plea or a plea of nolo contendere without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea."

given the opportunity to attack a plea on appeal to this court as a result of a technically inadequate plea canvass; attacks on guilty pleas are clearly more difficult to dispose of when we are not able to point to clear and uncontradicted admissions made by the defendant at a plea hearing.

Nevertheless, this court has never required the "articulation of talismanic phrases" at plea hearings, and we have instead been flexible in terms of permitting a district judge wide latitude in fulfilling the above requirements. *See generally* Wynn v. State, 96 Nev. 673, 615 P.2d 946 (1980); Heffley v. State, *supra.* For example, we have held that the trial judge himself is not required to explain the elements of the offense to the defendant, and may instead request one of the attorneys present to explain the elements to the defendant. *See* Ball v. Warden, 99 Nev. 400, 663 P.2d 698 (1983). We have also held that the defendant himself need not make a factual admission of guilt, but may instead adopt a factual statement of guilt made by the judge or one of the attorneys at the hearing. *See* Croft v. State, 99 Nev. 502, 665 P.2d 248 (1983).

Furthermore, while we believe trial courts should in all circumstances conduct sufficient and thorough plea canvasses, as an appellate court reviewing the validity of a plea, we cannot be constrained to look only to the technical sufficiency of a plea canvass to determine whether a plea has been entered with a true understanding of the nature of the offense charged. As the United States Supreme Court has recognized, an appellate court should review the entire record, and look to the totality of the facts and circumstances of a defendant's case, to determine whether a defendant entered his plea with an actual understanding of the nature of the charges against him. *See* Marshall v. Lonberger, 459 U.S. 422 (1983); Henderson v. Morgan, 426 U.S. 637 (1976).

In *Lonberger* and *Henderson,* the Supreme Court reviewed two cases in which trial courts had failed to elicit statements on the record at the time of the defendants' plea hearings indicating that the defendants understood the nature of the charges against them. In assessing the validity of the defendants' pleas, however, the Court looked beyond the technical sufficiency of the plea canvasses to determine if the defendants had true notice of the charges against them. In both cases, the Court combed the entire record to determine if the defendants had received actual notice of the charges against them at some other time during the criminal proceedings, taking into account such factors as the defendants'

level of intelligence and ability to understand the nature of the proceedings. In *Henderson,* the Court concluded that the defendant's plea was invalid where the defendant had an "unusually low mental capacity," and where the record did not reflect that anyone had previously explained the charges to him. *Henderson* 459 U.S. at 642-43. Conversely, in *Lonberger,* the Court upheld the validity of the defendant's plea, where the defendant was of average intelligence, and where the Court could infer from certain statements made at the time of sentencing that the defendant had previously read the criminal information, which fully set forth the charges against him. The Court concluded from those factors that the defendant had received true notice of the charge against him.

Although this court has in the past relied upon the totality of the circumstances test in reviewing the validity of guilty pleas, *see, e.g.,* Taylor v. Warden, 96 Nev. 272, 607 P.2d 587 (1980), we have not had occasion to discuss in detail how this test should be applied. Therefore, we have consolidated the two present appeals to illustrate how this test is to be applied in various circumstances. Initially, however, we note that the application of this type of test is essentially factual in nature, and thus best suited to trial court review in the first instance. Accordingly, in the future we will no longer permit a defendant to challenge the validity of a guilty plea on direct appeal from the judgment of conviction. Instead, a defendant must raise a challenge to the validity of his or her guilty plea in the district court in the first instance, either by bringing a motion to withdraw the guilty plea, or by initiating a post-conviction proceeding under NRS 34.360 or NRS 177.315. It shall then be the duty of the trial court to review the entire record to determine whether the plea was valid, either by reason of the plea canvass itself or under a totality of the circumstances approach. As we have held in the past, the trial court should view the guilty plea as presumptively valid and the burden should be on the defendant to establish that the plea was not entered knowingly and intelligently. *See generally* Wingfield v. State, 91 Nev. 336, 535 P.2d 1295 (1975). On appeal from the district court's determination, we will presume that the lower court correctly assessed the validity of the plea, and we will not reverse the lower court's determination absent a clear showing of an abuse of discretion. *See generally* Wynn v. State, *supra.*

With the above considerations in mind, we consider the merits of the present appeals.

### *Bryant v. State, No. 15336*

Appellant Bryant entered a guilty plea to one count of obtaining or possessing a credit card without the cardholder's consent, in ·

violation of NRS 205.690. Shortly after he entered his plea, Bryant filed a motion to set aside his plea, which was denied by the district court. This appeal followed.

On appeal, Bryant contends that his plea was not entered knowingly and intelligently because the record does not reflect that he understood the nature of the charge against him. Specifically, Bryant contends that the trial court did not advise him that a fraudulent intent to circulate, use or sell the credit card was an element of the offense to which he was pleading guilty; Bryant also contends that the trial court failed to elicit a sufficient factual admission from him indicating that he possessed such an intent. *See generally* Ridings v. State, 99 Nev. 709, 669 P.2d 718 (1983).

As noted above, this court is concerned with determining whether a defendant understood the true nature of the charge against him. Such an understanding does not always require that a defendant express an understanding of, or admit to, every specific element of the crime charged.[3] Such a requirement is not necessary in all cases to a basic and true understanding of the nature of the crime.

In Bryant's case, it is true that the district court neither explained the intent element to appellant nor elicited a factual admission from appellant covering the specific element of criminal intent. Nevertheless, a review of the record as a whole reveals no basis for concluding that Bryant did not understand the true nature of the charge against him.

Initially, we note that at the plea hearing itself the district court asked appellant if he had discussed the elements of the offense with his attorney prior to the entry of his plea, and appellant responded affirmatively. Although this admission standing alone might not be sufficient to infer that Bryant fully understood the nature of the charge against him, when we view the record as a whole, we are more than satisfied that Bryant did understand the true nature of the offense, and in fact did understand that a fraudulent intent was an element of the crime charged.

First, we note that Bryant was present at his preliminary hearing, when his own counsel explained that a fraudulent intent was an element of the offense charged. In fact, Bryant's counsel argued at the preliminary hearing that the State did not present sufficient evidence to establish that Bryant harbored the requisite criminal intent to circulate, use or sell the credit cards in his possession in a fraudulent manner. Further, counsel filed a pretrial petition for a writ of habeas corpus in the district court on

---

[3]To the extent that our opinion in Ridings v. State, *supra,* holds to the contrary, it is hereby overruled.

Bryant's behalf, again alleging that the State did not present sufficient evidence of Bryant's fraudulent intent at the preliminary hearing. Given the fact that this issue was prominently and frequently raised prior to the entry of Bryant's plea with his obvious knowledge, it would be difficult to believe that Bryant did not understand that a fraudulent intent was an element of the charge against him.

Moreover, we note that at Bryant's sentencing hearing, Bryant's counsel stated in Bryant's presence, that Bryant had previously admitted to him that he was selling credit cards he knew to be stolen for approximately $25 each. Counsel also stated that he had told appellant that this conduct was in violation of the statute. Further, at the sentencing hearing, the trial judge read Bryant the charging information, which included a statement that Bryant possessed the credit cards with the felonious intent to circulate, use or sell the credit cards. Bryant did not try to contradict his attorney's statement regarding Bryant's criminal intent at that hearing, nor did he express any confusion regarding the trial court's recitation of the elements of the offense. It is difficult to believe that Bryant would have waited until after he was formally sentenced to protest the insufficiencies of the above explanations and recitations of the facts, if in fact he did not understand the explanations and recitations at the time they were made. *See* Director, State Prisons v. Powell, 101 Nev. 736, 710 P.2d 73 (1985).

Finally, we note that the lower court made a specific factual finding that Bryant had received post-secondary education and possessed a sufficient intelligence to understand the above proceedings, and that Bryant was able to and did understand the nature of the charge against him based on those proceedings. In light of the above, Bryant has failed to convince us that the lower court abused its discretion by finding Bryant's plea to have been voluntarily, knowingly and intelligently entered under the totality of the facts and circumstances of his case. Accordingly, we affirm the lower court's refusal to withdraw Bryant's plea.

### *Dvorak v. State, No. 15852*

Dvorak pleaded guilty to the crime of obtaining money under false pretenses in violation of NRS 205.380. Shortly thereafter, Dvorak filed a motion to withdraw his guilty plea in the district court, but the district court denied the motion and this appeal followed.

The charging information in this case accused Dvorak of falsely advising the victim that he (Dvorak) would obtain a government approved home improvement loan for the victim in the amount of $3,500. According to the information, Dvorak

advised the victim that she would receive 15 percent of the $3,500 and that Dvorak would use the remaining monies to make certain improvements on the victim's home. Dvorak did not obtain a government loan on the victim's behalf. Instead, the victim executed a second mortgage on her home in the amount of $3,500, which Dvorak ultimately obtained for the ostensible purpose of making the agreed-upon improvements on the victim's home. The information alleged that Dvorak failed to complete the improvements and further did not refund to the victim any of the money intended for the improvements. The charging information additionally alleged that Dvorak had taken the victim's money with no intent to complete the improvements.

At the plea hearing, the district court asked Dvorak what he had done that caused him to plead guilty. Dvorak replied as follows: "I loaned Ruby Mackie [the victim] thirty-five hundred dollars, and which she was to receive and did not receive." Dvorak contends that this recitation of the "facts" did not constitute a full or sufficient admission of guilt to the crime with which he was charged. Dvorak further contends that the district court failed to explain the elements of the offense to him at the time of the entry of his guilty plea. Dvorak therefore concludes that his plea was not entered knowingly and intelligently. We disagree.

[Headnote 10]

As in the *Bryant* case, Dvorak readily admitted at the plea hearing that he had previously discussed the elements of the offense with his attorney prior to the entry of the plea. Further, while Dvorak's statement of guilt was somewhat inarticulate and did not delve into the details of the entire transaction as set forth in the information, it did sufficiently indicate that Dvorak was willing to admit his guilt to the basic elements of the offense itself, to-wit: that he helped arrange a loan transaction for the victim, retained the loan proceeds, and failed to provide the victim with the monies or services which Dvorak promised her she would receive.

Moreover, our review of the record convinces us that Dvorak was familiar with the state's more detailed theory of his guilt. Specifically, we note that Dvorak was present at his preliminary hearing and heard the victim describe in detail the facts of the charged offense. Additionally, at the plea hearing, Dvorak stated that he was pleading guilty to the charges in the information, and in fact admitted on the record that the factual allegations set forth in the information were true and correct. Since the information fully set forth the nature of the offense to which he was pleading guilty, Dvorak's acknowledgement that he was familiar with the information clearly indicates that Dvorak was aware of the exact

nature of the charge against him at that time. *See* Marshall v. Lonberger, *supra.*

Moreover, we also note that at Dvorak's sentencing hearing, Dvorak's own attorney described the facts of Dvorak's crime, and admitted that the victim did not receive all the money to which she was entitled and/or that some monies were "missing." Dvorak neither protested these statements nor expressed any confusion with regard to them. As in Bryant's case, it is therefore difficult to believe that Dvorak only became confused about the nature of the case against him after the termination of the above proceedings. *See* Director, State Prison v. Powell, *supra.*

Finally, we note that there is nothing in the record to indicate that Dvorak did not possess a sufficient intelligence or mental ability to understand the above proceedings. Therefore, in light of the above factors, we conclude that the lower court did not abuse its discretion by finding that Dvorak's plea was entered knowingly and intelligently. Accordingly, we hereby affirm the district court's order denying Dvorak's motion to withdraw his plea.

## Conclusion

As discussed above, we affirm both pleas in this case because the record as a whole reveals that the defendants both possessed an actual understanding of the charges against them when they entered their guilty pleas. Again, however, we strongly encourage district courts to conduct thorough plea canvasses, affirmatively eliciting a complete understanding of the nature of the charge to which a defendant is pleading guilty on the record at the time of the plea hearing itself, in accordance with our previous opinions. *See, e.g.,* Hanley v. State, *supra.* Such canvasses will save judicial resources by obviating the need to look beyond the technical sufficiency of a plea and eliminating the need to engage in the type of time-consuming review of the record which we were forced to conduct in the present cases. Nevertheless, we emphasize that a court reviewing the validity of a guilty plea should not hesitate to look at the entire record whenever necessary to determine whether a plea was entered knowingly and intelligently in light of all the facts and circumstances of the particular case. Because the facts and circumstances in the present two cases reveal that both pleas were entered knowingly and intelligently, we affirm the lower court's refusal to set the pleas aside.